U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2021 JUN -7 PM 4: 12

CLERK

BY _____ /s/_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| CFGADVANCE, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:20-cv-00043 |
| | ) |
| AGILECAP, LLC, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
AND GRANTING DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S
SUR-REPLY**
(Docs. 14 & 24)

Plaintiff CFGAdvance, LLC brings this action against Defendant AgileCap, LLC alleging that Defendant failed to pay Plaintiff distributions owed to it under a Limited Liability Company Agreement (the "LLC Agreement"). Plaintiff asserts a breach of contract claim against Defendant. Pending before the court is Defendant's motion to dismiss for failure to state a claim for which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). On November 13, 2020, Plaintiff opposed Defendant's motion to dismiss and on November 30, 2020, Defendant replied at which time the court took the pending motion under advisement. Without leave of the court, Plaintiff file a sur-reply on December 14, 2020 and on December 28, 2020 Defendant moved to strike the sur-reply. Plaintiff opposes the motion to strike.

Plaintiff is represented by Christian S. Chorba, Esq., and Claudine C. Safar, Esq. Defendant is represented by Daniel J. Martin, Esq., and Hillary A. Borcherding, Esq.

**I.  Allegations in the Amended Complaint.**

Plaintiff is a Vermont limited liability company whose primary business is investing. Defendant is a Delaware limited liability company whose business includes

lending money to insurance brokerage firms by accepting as collateral the commissions due to those insurance brokerage firms.

Plaintiff alleges that on December 18, 2014, Plaintiff and Defendant entered into the LLC Agreement[1] for the purpose of "setting forth the terms and conditions governing the operation and management of [AgileCap, LLC]." (Doc. 1-1 at 5.) Plaintiff further alleges that pursuant to the LLC Agreement, Plaintiff is an investor in Defendant and holds 25 Class B membership units, constituting all of the Class B shares. Plaintiff asserts that it is therefore entitled to twenty-five percent of Defendant's net quarterly profits but has no voting or management rights.

Distribution to Class B members is governed by Section 7.6(b) of the LLC Agreement which states:

> Subject to Section 7.7, the Class B Member shall be entitled to distributions from Available Cash exclusively as follows:
>
> (i) With respect to each Quarterly Distribution Calculation Period within the Class B Distribution Period, an amount, if any (each, a "**Class B Distribution**"), equal to the product of (i) the amount, if any, equal to the Net Profits for such Quarterly Distribution Calculation Period; multiplied by (ii) the Class B Member's Percentage Interest. The amount of each Class B Distribution, less any amounts distributed pursuant to Section 7.6(f) or Section 7.7, shall be retained by the Company in accordance with the terms of this Agreement and, if held until the expiration of the Class B Distribution Period, thereafter paid to the Class B Member pursuant to Section 4.7. For the avoidance of doubt, no interest shall accrue on the Class B Distributions.
>
> (ii) At the end of each Quarterly Distribution Calculation Period within the Class B Distribution Period (other than the first Quarterly Distribution Calculation Period), the Company shall calculate the

---

[1] Plaintiff represents that it attached a copy of the LLC Agreement to the Amended Complaint, however, this exhibit was only attached to a prior version of Plaintiff's Complaint. Because Plaintiff quotes the LLC Agreement in its Amended Complaint the LLC Agreement is incorporated therein by reference and may be considered in adjudicating Defendant's motion to dismiss. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 231 (2d Cir. 2016) (noting that a court may consider a document that is incorporated by reference in or integral to a plaintiff's complaint, particularly "a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls") (internal quotation marks omitted).

        amount equal to the quotient of (x) the product of (A) the Class B Distribution for such Quarterly Distribution Calculation Period, less any amounts distributed pursuant to Section 7.6(f) or Section 7.7, multiplied by (B) the applicable Quarterly Distribution Calculation Period Rate, divided by (y) four (4) (the "**Class B Distribution Preference Amount**"). Promptly following such calculation, and upon the end of each subsequent Quarterly Distribution Period within the Class B Distribution Period, the Company shall make a distribution in cash of such Class B Distribution Preference Amount.

  (iii)    For Purposes of this Section 7.6(b), the "**Quarterly Distribution Calculation Period Rate**" shall be an amount equal to the product of (x) the weighted average quarterly interest rate the Company is then paying on all loans outstanding to the Company from any third party lender as of the last day of such Class B Distribution Period, multiplied by (y) 1.2. For illustration purposes only, if on the last day of such Class B Distribution Period, all of Buyer's indebtedness for borrowed money is under one loan with a third party lender with interest accruing thereon at 10% per annum, then the Quarterly Distribution Calculation Period Rate would by 0.12.

*Id.* at 21-22.)

      Pursuant to the LLC Agreement, Defendant regularly provided Plaintiff with its annual Schedule K-1's and quarterly financial statements. Plaintiff alleges that "for years, [Defendant] was erroneously calculating the distributions it owed [Plaintiff]" by computing distributions based on cumulative net profit since Defendant's founding, rather than based on the profit realized in each quarter. (Doc. 6 at 4.) Plaintiff also asserts that Defendant was representing greater quarterly profits to its investors than it was to Plaintiff.

      Plaintiff contends that under the terms of Section 7.6(b)(ii) of the LLC Agreement, the unpaid distributions are subject to an 11.4% interest rate. Based upon this rate and "figures subsequently provided to [Plaintiff], including figures from the quarterly profits [Defendant] represented to investors[,]" Plaintiff contends that it was underpaid by $394,321.62 over the duration of the LLC Agreement. *Id.* at 5. Plaintiff seeks restitution damages in this amount.

3

## II. Conclusions of Law and Analysis.

### A. Defendant's Motion to Strike Plaintiff's Sur-Reply.

The District of Vermont Local Rules of Procedure do not specifically contemplate sur-replies, nor do they bar their use. *See* L.R. 7(a). On December 14, 2020, Plaintiff filed a "Motion for Sur-Reply and Sur-Reply in Opposition to Motion to Dismiss" (Doc. 23). While styled as a motion seeking leave of the court to file a sur-reply, the motion offered no rationale for why a sur-reply should be permitted but rather offered additional legal argument in reply to Defendant's motion to dismiss.

Plaintiff contends that a sur-reply was necessary to "counter a number of issues" raised by Defendant in its reply brief, (Doc. 25 at 9), however, Plaintiff had ample opportunity to raise those same arguments in its opposition to the motion to dismiss. *See Riley v. Brook*, 2015 WL 7572308, at *4 (D. Vt. Nov. 24, 2015) (granting Defendant's motion to strike a sur-reply where "[a]lthough [p]laintiff contends that the constitutional issues in her Sur-Reply are responsive to Defendant's reply, Plaintiff had the opportunity to raise those arguments in her initial opposition to the motion to dismiss, and failed to do so.") (footnote omitted); *see also Guadagni v. N.Y. City Transit Auth.*, 387 F. App'x 124, 125-26 (2d Cir. 2010) (holding that "reply papers may properly address new materials raised in the opposition papers so as to avoid giving unfair advantage to the answering party.")

Because Plaintiff did not properly seek leave of court to file a sur-reply and does not address arguments raised for the first time in Defendant's reply, Defendant's motion to strike the sur-reply is GRANTED. *See Carthaginian Fin. Corp. v. Skinner, Inc.*, 2005 WL 1388689, at *2 (D. Vt. June 3, 2005) (granting a motion to strike sur-reply because "[a] sur-reply is not generally permitted, and [plaintiff] did not seek leave of the Court before filing the sur-reply."); *Chaney v. Stewart*, 2015 WL 1538021, at *1 (D. Vt. April 7, 2015) (granting motion to strike sur-reply because "[t]he Local Rules do not provide for the filing of a sur[-]reply and [plaintiff] has neither requested leave of court nor

4

presented extraordinary circumstances justifying the filing in this case.").

### B. Defendant's Motion to Dismiss.

To survive a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiff must allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The sufficiency of a plaintiff's complaint under Rule 12(b)(6) is evaluated using a "two-pronged approach[.]" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 679). First, the court discounts legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. The court is also "'not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Id.* (citation omitted). Second, the court considers whether the factual allegations, taken as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. This second step is fact-bound and context-specific, requiring the court "to draw on its judicial experience and common sense." *Id.*

The court does not "weigh the evidence" or "evaluate the likelihood" that a plaintiff's claims will prevail. *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 201 (2d Cir. 2017). It is not, however, required to credit as true factual allegations that are contradicted by the documents on which they are based. *See Cates v. Crystal Clear Technologies, LLC*, 874 F.3d 530, 536 (6th Cir. 2017) (holding that "when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations") (internal quotation marks and citations omitted); *Zevon v. Dep't Stores Nat. Bank*, 2013 WL 3479432, at *4 (S.D.N.Y. July 8, 2013) (holding that "if the allegations of a complaint are contradicted by documents made a part thereof, the

5

document controls and the court need not accept as true the allegations of the complaint"); *IBEW Local 98 Pension Fund v. Cent. Vermont Pub. Serv. Corp.*, 2012 WL 928402, at *8 (D. Vt. Mar. 19, 2012) ("The court's assumption of alleged facts as true, however, does not extend to factual allegations contradicted by . . . documentary evidence[.]") (internal quotation marks omitted).

### 1. Whether Plaintiff is a Party to the LLC Agreement.

Defendant contends that Plaintiff has failed to plausible plead a claim for breach of contract because Plaintiff is not a party to the LLC Agreement. Under Delaware law,[2] "the elements of a breach of contract claim are: (1) a contractual obligation; (2) a breach of that obligation by the defendant; and (3) a resulting damage to plaintiff." *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 140 (Del. Ch. 2003). "As a general rule, only parties to a contract and intended third-party beneficiaries may enforce an agreement's provisions." *NAMA Holdings, LLC v. Related World Mkt. Ctr., LLC*, 922 A.2d 417, 434 (Del. Ch. 2007).

Defendant asserts that Plaintiff, while having the same name as the entity that entered into the LLC Agreement, is an entirely separate company. Defendant attaches documents from the Vermont Secretary of State and the Virginia State Corporation Commission to support this contention. Because the parties do not dispute the accuracy of these public records, the court takes judicial notice of them. *See Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 60 (2d Cir. 2016) (stating that a court "may properly take judicial notice of [a] document (without converting [the] motion to dismiss into a motion for summary judgment) because the [document] is publicly available and its accuracy cannot reasonably be questioned.") (citing Fed. R. Evid. 201(b)).

CFGAdvance, LLC was formed in Virginia on December 27, 2010, ("CFGAdvance Virginia") and entered into the LLC Agreement with Defendant in 2014. In August 2016, CFGAdvance Virginia filed articles of organization surrender with the

---

[2] The LLC Agreement states that it "shall be governed exclusively by the laws of the State of Delaware, and all rights and remedies shall be governed by such laws without regard to principles of conflict of laws." (Doc. 1-1 at 33, ¶ 14.2.)

6

Virginia State Corporation Commission, which caused CFGAdvance Virginia to "cease[] to be a Virginia limited liability company as of" August 4, 2016. (Doc. 14-2 at 1.) In December 2016, CFGAdvance, LLC was formed in Vermont ("CFGAdvance Vermont").

In its opposition, Plaintiff contends that it domesticated CFGAdvance Virginia in Vermont and that CFGAdvance Virginia and Plaintiff are therefore the same legal entity. However, Plaintiff makes no similar allegations in its Amended Complaint. Moreover, while Plaintiff claims that it satisfied the threshold statutory requirements governing whether a foreign LLC is eligible to domesticate in Vermont, it tacitly concedes that Leo Cohen, CFGAdvance Virginia's managing member, did not properly file the documents required for domestication under 11 V.S.A. § 4154, but instead registered a separate legal entity by filing articles of organization with the Vermont Secretary of State. *See* Doc. 19 at 11 (arguing that "to foreclose CFGAdvance's claims merely because Mr. Cohen filed articles of organization and paid a higher fee – rather than filing articles of domestication and paying a lower fee – would run contrary to fundamental principles of fairness"). These facts appear fatal to Plaintiff's claim that it is a party to the LLC Agreement. In the absence of "any contractual obligation[,]" there is nothing that "could be breached." *H-M Wexford LLC*, 832 A.2d at 140.

Plaintiff further asserts that even if it is a separate legal entity from CFGAdvance Virginia, "equitable principles establish that the current entity should be recognized as the successor to CFGAdvance." (Doc. 19 at 11.) Again, however, these allegations are not contained in Plaintiff's Amended Complaint nor does Plaintiff's Amended Complaint seek equitable relief. Although Plaintiff argues that dismissing its breach of contract claim would run afoul of "the well-established doctrine of unjust enrichment[,]" *id.*, Plaintiff has not alleged a claim for unjust enrichment in its Amended Complaint, nor has it alleged facts showing "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010).

Finally, Plaintiff argues that because Defendant delayed in asserting that Plaintiff

was not a party to the LLC Agreement, it should be barred from now raising the issue. Because Defendant raised the issue in its motion to dismiss which was the first responsive pleading it filed, it did so in a timely manner.

As Plaintiff appears to be a distinct legal entity from CFGAdvance Virginia, it is not a party to the LLC Agreement. As a result, Plaintiff cannot bring a breach of contract claim based on the facts alleged in its Amended Complaint. Defendant's motion to dismiss is therefore GRANTED.

### 2. Whether the Amended Complaint Should be Dismissed with Prejudice.

Defendant argues that the Amended Complaint should be dismissed with prejudice because amendment would be futile. Pursuant to Fed R. Civ. P. 15(a), courts "should freely give leave" to amend a complaint "when justice so requires." Fed. R Civ. P. 15(a). However, "[l]eave may be denied 'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)).

Here, Defendant argues that Plaintiff asserts rights under the LLC Agreement that do not exist and that, in any event, because any claim it seeks to assert would be barred by the applicable statute of limitations, any amendment would be futile. *See Grace v. Rosenstock*, 228 F.3d 40, 53 (2d Cir. 2000) ("Amendment would likely be futile if, for example, the claims the plaintiff sought to add would be barred by the applicable statute of limitations."). Because it is not clear on what legal or equitable theory Plaintiff may seek leave to amend its Complaint, the court cannot conclude at this juncture that any potential claim would be futile. Defendant cites no other ground for denying leave to amend and the court finds none. Plaintiff is therefore GRANTED leave to amend within twenty (20) days of the date of this Opinion and Order consistent with the Federal Rules of Civil Procedure and this court's Local Rules.

## CONCLUSION

For the foregoing reasons, the court GRANTS Defendant's motion to dismiss (Doc. 14) and GRANTS Plaintiff leave to amend its Complaint within twenty (20) days of the date of this Opinion and Order consistent with the Federal Rules of Civil Procedure and this court's Local Rules.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 8th day of June, 2021.

Christina Reiss, District Judge
United States District Court